AMERICAN HOME ASSURANCE COMPANY, INC. and The Travelers Indemnity Company, Appellants,

v.

UNAUTHORIZED PRACTICE OF LAW COMMITTEE, Appellee.

No. 11–02–00212–CV.

Court of Appeals of Texas, Eastland.

Nov. 6, 2003.

Rehearing Overruled Jan. 8, 2004.

---

Jim Cowles, R. Michael Northrup, Cowles & Thompson, Rey Rodriguez, Richard A. Smith, William Dorsaneo, Gibson, Dunn & Crutcher, Dallas, Mark Wal-

ters, Thomas Rogers, Jackson Walker, L.L.P., Austin, Thomas C. Wright, Lucy Haroutunian, Wright Law Firm, Houston, William Barker, Sonnenschein, Nath & Rosenthal, Chicago, IL, for appellants.

Mark Ticer, Law Office of Mark A. Ticer, Dallas, David Keltner, Jose, Henry, Brantley & Keltner, Fort Worth, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

### Opinion

TERRY McCALL, Justice.

American Home Assurance Company, Inc. (American Home) and The Travelers Indemnity Company (Travelers) sought a declaratory judgment against the Unauthorized Practice of Law Committee (UPLC) that using lawyers who are employees of an insurance company to defend insureds under liability policies was not the unauthorized practice of law by the insurer. They also sought attorney's fees from the UPLC. The UPLC, an entity created by the Texas Legislature and appointed by the Texas Supreme Court,[1] counterclaimed for a declaratory judgment and for an injunction enjoining American Home and Travelers from continuing to use staff attorneys to represent their insureds. Both sides moved for summary judgment. The trial court entered a final judgment for the UPLC, holding that the insurance companies were engaged in the unauthorized practice of law, but staying its injunction pending this appeal. We reverse and render judgment for the in-

surance companies. We reverse and remand for a determination of the attorney's fees owed by the UPLC.

### Principal Purpose Behind Prohibiting the Unauthorized Practice of Law

Courts generally have prohibited the unauthorized practice of law because of a perceived need to protect individuals and the public from the mistakes of the untrained and the schemes of the unscrupulous, who are not subject to the judicially imposed disciplinary standards of competence, responsibility, and accountability. TEX. DISCIPLINARY R. PROF'L CONDUCT 5.05 cmt. 1.[2] The UPLC does not dispute the fact that staff counsel of American Home and Travelers are properly trained and licensed to practice law. The UPLC also concedes that "there is no evidence in the record regarding complaints by insureds" despite the long period during which insurance companies have used staff counsel.

### Background

Insureds purchase liability insurance to protect against the risk of defending a lawsuit and to protect against the risk of having to pay a money judgment as a result of that lawsuit. The defense of a lawsuit covered by liability insurance involves a "tripartite" relationship consisting of the insured, the insurer, and the defense counsel. Because this tripartite relationship may involve conflicts,[3] there has been an ongoing national debate concerning the

---

1. See In re Nolo Press/Folk Law, Inc., 991 S.W.2d 768, 772 (Tex.1999).

2. Reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998).

3. For example, there may be disagreements between the insurer and the insured over conduct of the litigation due to (1) the insured's concern over the side effects of litigation, such as publicity and reputation, or about a

personal or business relationship with the plaintiff; (2) the preference of the insured for a more expensive effort than the insurer is willing to make; and (3) the possibility that the insurer has some additional interest in the outcome of a particular lawsuit, such as its desire to obtain a precedential ruling that will benefit the insurer in other cases. Charles Silver & Kent Syverud, The Professional Re-

ethical obligations of defense counsel and the role of the insurer in providing defense counsel.[4] Use of staff counsel by insurance companies has raised the issue of whether such use constitutes the unauthorized practice of law by corporations.

Typical policies of insurance issued by American Home and Travelers were introduced as part of the summary judgment evidence. Under the policies, the insurer promises to defend and to indemnify the insured against certain risks up to stated limits of liability. The insurer has the right and duty to provide a legal defense to a lawsuit against the insured if the petition alleges a covered claim. The Texas Supreme Court has recognized that a liability policy may grant to the insurer the right to take complete and exclusive control of the insured's defense; American Home and Travelers are granted that control under the policies. *State Farm Mutual Automobile Insurance Company v. Traver*, 980 S.W.2d 625, 627 (Tex.1998), citing Douglas R. Richmond, *Walking a Tightrope: The Tripartite Relationship Between Insurer, Insured, and Insurance Defense Counsel*, 73 NEB. L. REV. 265, 269 (1994)("Because of its financial interest in the effective resolution of a claim, the insurer has a contractual right to control its insured's defense.").

Prior to American Home and Travelers filing this case, the UPLC brought suit in Dallas County against Allstate Insurance Company and its staff counsel, alleging that Allstate was engaged in the unauthorized practice of law.[5] That suit by the

---

*sponsibilities of Insurance Defense Lawyers*, 45 DUKE L.J. 255, 266 (1995).

**4.** Daniel M. Martinez, *Insurance Companies Use of "Captive" or In–House Counsel To Represent Insureds Constitutes The Unauthorized Practice of Law: Is American Home the Right Decision For Texas?*, 34 ST. MARY'S L.J. 1007 (2003); Charles Silver, *When Should Government Regulate Lawyer–Client Relationships? The Campaign to Prevent Insurers from Managing Defense Costs*, 44 ARIZ. L. REV. 787 (2002); Michael D. Morrison & James R. Old, Jr., *Economics, Exigencies and Ethics: Whose Choice? Emerging Trends and Issues in Texas Insurance Defense Practice*, 53 BAYLOR L. REV. 349 (2001); Ellen S. Pryor & Charles Silver, *Defense Lawyers' Professional Responsibilities: Part II—Contested Coverage Cases*, 15 GEO. J. LEGAL ETHICS 29 (2001); Ellen S. Pryor & Charles Silver, *Defense Lawyers' Professional Responsibilities: Part I—Excess Exposure*, 78 TEXAS L. REV. 599 (2000); Nancy J. Moore, *Conflicts of Interest for In-House Counsel: Issues Emerging from the Expanding Role of the Attorney–Employee*, 39 S. TEXAS L. REV. 497 (1998); David A. Hyman, *Professional Responsibility, Legal Malpractice, and the Eternal Triangle: Will Lawyers or Insurers Call the Shots?*, 4 CONN. INS. L.J. 353 (1997); Nancy J. Moore, *The Ethical Duties of Insurance Defense Lawyers: Are Special Solutions Required?*, 4 CONN. INS. L.J. 259 (1997); Thomas D. Morgan, *What Insurance Scholars Should Know About Professional Responsibility*, 4 CONN. INS. L.J. 1 (1997); Stephen L. Pepper, *Applying the Fundamentals of Lawyers' Ethics to Insurance Defense Practice*, 4 CONN. INS. L.J. 27 (1997); Charles Silver, *Flat Fees and Staff Attorneys: Unnecessary Casualties in the Continuing Battle Over the Law Governing Insurance Defense Lawyers*, 4 CONN. INS. L.J. 205 (1997); Robert J. Johnson, Comment, *In–House Counsel Employed by Insurance Companies: A Difficult Dilemma Confronting the Model Code of Professional Responsibility*, 57 OHIO ST. L.J. 945 (1996); Douglas R. Richmond, *Lost in the Eternal Triangle of Insurance Defense Ethics*, 9 GEO. J. LEGAL ETHICS 475 (1996); Charles Silver & Kent Syverud, *The Professional Responsibilities of Insurance Defense Lawyers*, 45 DUKE L.J. 255 (1995); Leo J. Jordan & Hilde E. Kahn, *Ethical Issues Relating to Staff Counsel Representation of Insureds*, 30 TORT & INS. L.J. 25 (1994); Ronald E. Mallen, *Defense by Salaried Counsel: A Bane or a Blessing?*, 61 DEF. COUNS. J. 518 (1994); Douglas R. Richmond, *Walking a Tightrope: The Tripartite Relationship Between Insurer, Insured, and Insurance Defense Counsel*, 73 NEB. L. REV. 265 (1994); Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?*, 72 TEXAS L. REV. 1583 (1994).

**5.** The parties advise that the case is still pending. *See Unauthorized Practice of Law Comm.*

UPLC provided the impetus for both this case and for *Nationwide Mutual Insurance Company v. Unauthorized Practice of Law Committee*, 283 F.3d 650 (5th Cir. 2002). Nationwide sought a declaration by the federal district court that the Texas State Bar Act,[6] as interpreted by the UPLC, violates the federal constitution and that Texas law does not prohibit it from employing salaried staff attorneys to represent its insureds. Affirming the district court's abstention ruling, the Fifth Circuit held that abstention under the *Pullman Doctrine*[7] was proper and that Nationwide's case should have been dismissed without prejudice. For *Pullman* abstention to be appropriate, the Fifth Circuit explained that the case must involve (1) a federal constitutional challenge to state action and (2) an unclear issue of state law that, if resolved, would make it unnecessary for the federal court to rule on the federal constitutional question. To satisfy the second prong, there must be an uncertain issue of state law that is "fairly susceptible" to an interpretation that would render it unnecessary for the federal court to decide the federal constitutional question. After reviewing the Texas statutes and case law, the Fifth Circuit concluded that Texas "law is fairly susceptible to a reading that would permit Nationwide to employ staff counsel on behalf of its insureds." *Id.* at 655.

In 2001, two bills were introduced in the Texas House of Representatives to prevent staff counsel from representing insureds. TEX. H.B. 1383, 77th Leg., R.S. (2001), and TEX. H.B. 3563, 77th Leg., R.S. (2001). Insurance companies introduced testimony that the use of staff counsel has resulted in lower costs to the insurance companies and lower premiums to the insureds. Many of the arguments made here, especially the UPLC's ethical arguments, were also made before the Texas Legislature. The bills were not enacted into law.

The insurance companies argue that the use of staff attorneys is permissible because the attorneys, in addition to their primary duty to the insured, are also defending the financial interest of the insurance company because it is the entity that will pay any adverse judgment against the insured, at least up to the policy amount.[8] The UPLC contends that the use of staff attorneys violates the Texas Disciplinary Rules of Professional Ethics.[9] The UPLC argues that (1) no attorney can serve two masters; (2) the insurance companies' right to control and direct staff counsel violates the lawyer's professional code of ethics because he cannot exercise his independent judgment; and (3) therefore, use of staff counsel should be prohibited because the employee-lawyer is subject to an

*v. Collins*, No. 98–8269 (298th Dist. Ct., Dallas County, Texas).

6. TEX. GOV'T CODE ANN. § 81.001 et seq. (Vernon 1998 & Supp.2003).

7. *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

8. Amici curiae briefs in support of the insurance companies' position have been received from Allstate Insurance Co., USAA Property and Casualty, Zurich American Insurance Co., Liberty Mutual Insurance Company, and Progressive Casualty Insurance Company;

Staff Counsel Attorneys; and The Texas Association of Business, The American Insurance Association, The Alliance of American Insurers, The National Association of Independent Insurers, The National Association of Mutual Insurance Companies, and Non–Staff Attorneys Lipscomb Norvell, Jr., Harrison Yoss, Jack Latson, G. Byron Sims, Donald G. Henslee, Susan Abbott Schwartz, Mark Clemer, Mark A. Lindow, D. Bradley Kissia, David Dunn, and David L. Treat.

9. TEX. DISCIPLINARY R. PROF'L CONDUCT *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998 & Supp. 2003)(TEX. STATE BAR R. art. X, § 9).

irreconcilable conflict between his employer and the insured. The UPLC's statutory and case-law argument is based on the syllogism: (1) a corporation cannot practice law; (2) staff attorneys, whose sole client is the insured, are agents of the insurance corporation; and (3) therefore, the insurance company is practicing law.[10]

The standards for reviewing summary judgments are well-settled. *Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546 (Tex.1985); *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *Lubbock County, Texas v. Trammel's Lubbock Bail Bonds*, 80 S.W.3d 580, 583 (Tex.2002); *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988).

### The UPLC's Argument Based on Ethics Rules

A. *A Corporation's Right to Control Employees*

Citing *Darensburg v. Tobey*, 887 S.W.2d 84, 88 (Tex.App.-Dallas 1994, writ den'd), the UPLC argues that employers have the right to direct the details of the work of their employees. From this premise, the UPLC concludes that the insurance company's right to control the details of the work of staff attorneys creates an irreconcilable conflict with the interests of the insured because insurance companies will interfere with their staff attorney's exercise of professional judgment.

■ The UPLC argument begins with a false premise. In *Darensburg*, the court recognized that the employer "did not have the right to direct and control" the employee physician's exercise of professional judgment. *Darensburg v. Tobey, supra* at 89. An employee attorney does not owe an absolute duty of loyalty to his or her employer. *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 201 (Tex.2002). In *Johnson*, an associate employed at the Brewer & Pritchard law firm referred a potential client to an attorney, Johnson, who was not in the firm. After the associate left the firm, the law firm sued the associate and Johnson, claiming that the associate owed an absolute fiduciary duty to abstain from referring potential clients to any firm except the associate's employer. *Id.* at 202–03. The *Johnson* court held that the associate's ethical duty to the client outweighed the firm's interest in demanding loyalty from its associates. *Id.* at 203.

The insurance staff attorney, like the outside attorney, may face conflicts; however, his status as an employee is not an irreconcilable conflict. There is no evidence in the record that staff attorneys face conflicts not faced by outside attorneys. Potential conflicts are inherent in the tri-partite relationship, and those ethical concerns are properly addressed by the Texas grievance system.

The UPLC urges that the Texas Disciplinary Rules of Professional Conduct are not enforceable against a corporation and that, therefore, "professional discipline cannot be enforced against the insurance company no matter how much they attempt to control their lawyer-employee's practice." We agree with the statement, but the same is true where outside counsel is used. Lack of disciplinary authority over an insurance company using staff attorneys could not have been a basis for the trial court's summary judgment for the UPLC.

---

**10.** Amici curiae briefs in support of the UPLC's position have been received from the Texas Association of Defense Counsel and Dr. Christopher Hull.

## B. *No Violation of Professional Ethics Rules*

■ The American Bar Association (ABA) recently reaffirmed its earlier rulings that nothing in the ethics rules prohibits insurance staff counsel from defending insureds. ABA Comm. on Ethics and Prof'l Responsibility, Formal Op. 03–430 (2003). The Texas Disciplinary Rules of Professional Conduct (Rules), adopted in 1990, were modeled after the American Bar Association's Model For Professional Conduct (Model Rules). Thus, formal opinions of the ABA's Committee on Ethics and Professional Responsibility are persuasive authority unless the Texas Rule differs from the Model Rule in a material respect. A detailed comparison of the Rules and the Model Rules can be found at Cornell University's Legal Information Institute's website.[11]

The UPLC argued in its motion for summary judgment that the following Texas Rules were violated: 1.05 (Confidentiality of Information); 1.06 (Conflict of Interest: General Rule); 2.02 (Evaluation for Use by Third Persons); 5.04(c) & (d) (Professional Independence of a Lawyer); 5.05 (Unauthorized Practice of Law); 7.06 (Prohibited Employment); 8.03 (Reporting Professional Misconduct); and 8.04 (Misconduct). We have examined the Texas Rules and the Model Rules on which the Texas Rules were based. Nothing in the Texas Rules supports a conclusion that it is unethical for insurance staff counsel to represent insureds.

ABA Formal Opinion 282 was one of the opinions reaffirmed in ABA Formal Opinion 03–430. The ABA Committee on Ethics and Professional Responsibility in 1950 first addressed the ethical aspects of the issue now before us. In its Formal Opinion 282, the ABA Committee concluded:

> There is nothing basically unethical in a lawyer, who is employed and compensated by a collision insurance company, defending a person in an action based upon damage to person and property brought by a third party.

ABA Formal Opinion 282 was relied on by the Texas Committee on Professional Ethics in its Opinion 260 in 1963. In Opinion 260, the Texas Committee approved an insurance company's use of staff counsel to defend its insureds and to prosecute subrogation cases on behalf of the company. Opinion 260 indicates that insurance companies in Texas have been using staff counsel to represent their insureds at least since 1963.

The use of insurance staff counsel in Texas existed even before 1963. Op. Tex. Ethics Comm'n No. 167 (March 1958) ruled that mere employment of insurance staff attorneys is not any evidence of "their being exploited in violation of the ethics rules." Texas ethics rules at that time were also based on the ABA rules. We have compared the current Texas Rules with the ethical rules in effect in 1958 and in 1963. Nothing has been added to the current Rules that would alter the conclusion reached in Opinion Nos. 167 and 260.

## C. *One Client or Two Clients*

The UPLC emphasizes that Texas is a "one-client" state, meaning that the insured is the only client. Again, this argument involves ethical choices and the rules for professional conduct, not the unauthorized practice of law.

Moreover, the Texas Supreme Court has not expressly held that Texas is a one-client state.[12] In Opinion 260, the Texas

---

11. The website is http://www.law.cornell.edu/ethics/.

12. The most direct statement by a court is found in *Bradt v. West*, 892 S.W.2d 56, 77 (Tex.App.-Houston [1st Dist.] 1994, writ

Committee on Professional Ethics recognized that the attorney had two clients. The supreme court in *Employers Casualty Company v. Tilley*, 496 S.W.2d 552, 558 (Tex.1973), also viewed the outside attorney as having two clients, the insurer and the insured. The *Tilley* court's analysis was in terms of a lawyer representing two or more clients with differing interests. The concurring opinion faulted the majority for not finding that the lawyer's duties ran only to the insured. *Id.* at 563.

The supreme court in *State Farm Mutual Automobile Insurance Company v. Traver, supra* at 628, did state that "the lawyer owes unqualified loyalty to the insured" and that "the lawyer must at all times protect the interests of the insured if those interests would be compromised by the insurer's instructions." That statement was dicta and does not preclude the insurer being a client, at least when there is no conflict. *Traver* held that the insurance company was not vicariously liable for the conduct of the lawyer because he was an independent contractor. Footnote No. 6 in *American Physicians Insurance Exchange v. Garcia*, 876 S.W.2d 842, 844 (Tex.1994), did state that the lawyer was the insured's and that he did not represent one of the two insurance companies. The

footnote appears related to the facts in that case; it does not appear to be the statement of a general rule.[13]

■ Reality and common sense dictate that the insurance company is also a client. The insurance company retains the attorney, controls the legal defense, decides if the case should be settled, and pays any judgment or settlement amount up to policy limits. It is a fiction to say that the insured is the only client in view of the contractual relationships. We agree that the insured is the primary client and that ethical choices must be resolved in favor of the insured. But under contract law, the attorney can have two clients.[14] The "one-client, two-client" argument speaks to ethical conflicts, not to whether an insurance company is engaged in the unauthorized practice of law. Tennessee, for example, considers itself a one-client state, but has declared that its ethics rules do not support a finding that the use of staff attorneys is the unauthorized practice of law. *In re Youngblood*, 895 S.W.2d 322, 330–31 (Tenn.1995). Likewise, we conclude that there is nothing in the Texas Rules that would be a basis for finding that American Home and Travelers have engaged in the unauthorized practice of law.

den'd)("There is no attorney-client relationship between an insurer and an attorney hired by the insurer just to provide a defense to one of the insurer's insureds."). The court cited *Employers Casualty Company v. Tilley, supra,* but *Tilley* viewed the attorney as having two clients.

13. The footnote states that, although Crossland was paid by Insurance Corporation of America (ICA) and American Physicians Insurance Exchange (APIE), Crossland was Dr. Garcia's, not APIE's attorney. In the body of the opinion, the court stated that "ICA retained Ross Crossland and his law firm to assume primary responsibility for Garcia's defense. APIE hired another attorney to 'simply monitor the developments in this lawsuit.'" APIE concluded that Dr. Garcia's alleged

malpractice was not covered by its policy. Crossland informed the plaintiffs' attorney that he had been advised by APIE that he did "not in any manner represent" APIE's interests. The footnote did not state whether Crossland was ICA's attorney, only that he did not represent APIE.

14. Normally, the attorney-client relationship is based on contract. This is an additional reason why we hesitate to read supreme court dicta as declaring that the outside or staff attorney can never have both the insured and insurer as clients. See Charles Silver, *Does Insurance Defense Counsel Represent the Company or the Insured?,* 72 TEXAS L. REV. 1583 (1994)(lawyer represents both insured and insurer if retainer agreement so provides).

Determining that use of staff attorneys to represent insureds does not violate the Texas Rules does not, however, determine whether an insurance company is engaged in the unauthorized practice of law.

### The UPLC's Statutory and Case-Law Grounds for Summary Judgment

■ The UPLC first cites TEX. BUS. CORP. ACT. ANN. art. 2.01B(2) (Vernon 2003) for the proposition that a corporation may not be organized for the practice of law:

B. No corporation may adopt this Act or be organized under this Act or obtain authority to transact business in this State under this Act:

(2) If any one or more *of its purposes* for the transaction of business in this State is to engage in any activity which cannot lawfully be engaged in without first obtaining a license under the authority of the laws of this State to engage in such activity and such a license cannot lawfully be granted to a corporation. (Emphasis added)

The UPLC then points out that a corporation may not obtain a law license because only an individual may obtain a license to practice law in Texas. TEX. GOV'T CODE ANN. § 81.051 (Vernon 1998).

The short answer is that an insurance company is not organized to practice law. The purpose of an insurance company is to indemnify its insureds; the agreement to defend and pay attorney's fees is purely contractual and collateral to that purpose. Article 2.01B(2) is not violated. We turn next to what is the "practice of law."

■ The State Bar Act defines the "practice of law" as the preparation of legal documents and the rendering of legal services "on behalf of a client." TEX. GOV'T CODE ANN. § 81.101(a) (Vernon Supp.2002). Texas has long recognized

that a corporation's own interests may be represented through staff attorneys. A lay person may represent himself and so may a corporation, although the corporation's representative in court must be an attorney. *Moore v. Elektro–Mobil Technik GmbH,* 874 S.W.2d 324 (Tex.App.-El Paso 1994, writ den'd); *Bar Ass'n of Dallas v. Hexter Title & Abstract Co.,* 175 S.W.2d 108, 116 (Tex.Civ.App.-Fort Worth 1943), *aff'd, Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas,* 142 Tex. 506, 179 S.W.2d 946 (1944). Both staff attorneys and outside attorneys are agents of the corporation. *San Antonio Bar Association v. Guardian Abstract & Title Company,* 156 Tex. 7, 291 S.W.2d 697 (1956); *Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas, supra* at 954. When a staff or outside attorney represents his or her corporation's interest in a matter, the corporation is not practicing law because it is not acting (through its agents) "on behalf of a client."

The UPLC argues that, when a staff attorney is the corporation's agent and acts "on behalf of an [insured]," that is the practice of law by the corporation. Logically, of course, if use of a staff attorney to represent an insured is the practice of law, then use of an outside attorney is also the practice of law. American Home and Travelers contend that there is no "practice of law" because the attorney is representing the insurance company's direct financial interest. Alternatively, they also argue that, if the tripartite relationship is the practice of law, it is authorized.

There is nothing in the State Bar Act that declares the use of staff attorneys to represent insureds to be the unauthorized practice of law. Texas law has recognized the use of staff and outside attorneys in representing insureds for almost 50 years.

Other jurisdictions have consistently recognized Texas as allowing staff attorneys to represent insureds.

A review of Texas law begins with the cases of *United Services Automobile Ass'n v. Zeller*, 135 S.W.2d 161 (Tex.Civ.App.-San Antonio 1939, writ dism'd judgm't cor.), and *Utilities Ins. Co. v. Montgomery*, 134 Tex. 640, 138 S.W.2d 1062 (1940). At the time of *Zeller* and *Montgomery*, Article 430a of the 1925 Texas Penal Code, captioned "Corporation or association practicing law," adopted in 1933, provided in part:

> Section 1. It shall be unlawful for any corporation or any person, firm, or association of persons, except natural persons who are members of the bar regularly admitted and licensed, to practice law.

However, Section 3 of Article 430a contained a specific exclusion for insurance companies:

> And provided, further, that nothing herein shall prohibit any insurance company from causing to be defended, or prosecuted, or from offering to cause to be defended, *through lawyers of its own selection*, the insureds or assureds in policies issued or to be issued by it, in accordance with the terms of such policies; and shall not prohibit one such licensed attorney at law from acting for several common carriers or other corporations and associations or any of its subsidiaries pursuant to arrangement between said corporations or associations. (Emphasis added)

The *Zeller* court summarily rejected an argument that a policy obligating the insurance company to defend suits brought against the insured was a contract to practice law and, therefore, void. *United Services Automobile Ass'n v. Zeller, supra* at 166.

In *Montgomery*, Montgomery sued Smith, an insured. The insurance compa-

ny denied coverage but provided defense counsel under a non-waiver agreement. The non-waiver agreement stipulated that, by defending the suit, the insurance company did not waive its right to rely on every provision of the insurance policy and that the insurance company did not agree that it would pay any judgment rendered in favor of Montgomery against Smith. After obtaining a judgment against Smith, Montgomery sued the insurance company to collect. Montgomery argued that the non-waiver agreement was void because, under the terms of the agreement, the insurance company "contracted to engage in the practice of law contrary to [Article 430a]." *Utilities Ins. Co. v. Montgomery, supra* at 1064. Implicit in the decision was an assumption that the original liability policy fell within the exclusion in Section 3 of Article 430a. The question was whether the non-waiver agreement also would be found to be within the exclusion. Montgomery argued that the insurer denied that it had any interest in the suit yet it employed counsel and provided a legal defense for Smith. The court found that the non-waiver agreement was also within the statutory exclusion and, therefore, was not void. After quoting the above exclusion, the court explained:

> Clearly in this case the Company was not an intermeddler. It had some contingent interest to protect. While it claimed then, as now, that no liability could attach to it, yet it did not have a judicial determination of that issue for its protection. Montgomery was claiming that the risk fell within the coverage of the policy, and the non-waiver agreement should be considered in the light of the facts and circumstances as they then existed. Thus viewed *the Insurance Company was seeking to protect its own interests rather than those of Smith.* (Emphasis added)

*Utilities Ins. Co. v. Montgomery, supra* at 1064.

Although Article 430a was repealed in 1949 and although there is no comparable statutory exemption in Article 2.01B(2) today, even the UPLC acknowledges that the exemption for insurance companies contained in Article 430a is still the law in Texas where the insurer hires outside counsel. It is logically inconsistent to say that *Montgomery* is the law where outside counsel is used, but it is not still the law where staff counsel is used.

Despite the logical inconsistency of its position and despite *Montgomery,* the UPLC relies on *Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas, supra,* to support its argument that the use of staff attorneys constitutes the unauthorized practice of law by the insurance companies. *Hexter* also relied on Article 430a but found that the corporation in that instance was engaged in the unauthorized practice of law because of its use of staff attorneys to draw deeds and other instruments for land transactions in which the corporation had no interest. *Hexter* did not mention *Montgomery,* no doubt because the *Hexter* court recognized that insurance companies issuing liability policies with promises to provide a legal defense had a direct financial interest in the outcome of the litigation and Section 3 of Article 430a expressly provided that they were not engaged in the unauthorized practice of law.

The UPLC's reliance on *Hexter* is misplaced. As the Fifth Circuit pointed out in *Nationwide, Hexter* is factually distinguishable from the use of staff attorneys to represent an insured. *Hexter* involved the use of staff attorneys by an agent of a title company to prepare deeds, releases, and mortgages involving transactions to which the insurance company was not a party and in which the insurance company had

no interest. Although the corporation argued that it needed to prepare all papers necessary to place good title in the applicant so that the title company could then safely insure the title to the property, the court said:

> We are of the opinion, however, that the preparation of such papers is not the business of the insurance company. In this connection, it should be noted that this suit does not involve the right of the corporation to prepare the contract of insurance to which the insurance company would be a party, nor does it relate to documents prepared to cover the release or discharge of the company from obligations previously incurred by it. These transactions involve conveyances, releases, and mortgages from grantors to grantees, and to which the insurance company is not a party. They are executed for the purpose of placing good title in the grantee, so that the insurance company may thereafter insure the title if it chooses. Such papers relate to the rights of third parties in which the corporation has no present interest, but only a prospective one.

*Hexter Title & Abstract Co. v. Grievance Committee, Fifth Congressional Dist., State Bar of Texas, supra* at 952. The *Hexter* court explained that corporations may use staff attorneys to practice law if they possess a present financial interest in the matter. *Id.* at 952. *Hexter* held that the corporation was engaged in the unauthorized practice of law because it had no interest in the legal transactions; its interest was in insuring title to the property. *Hexter* is not on point because there was no tripartite relationship involving Hexter Title. American Home and Travelers have a direct financial interest in the insured's litigation; Hexter Title had no direct financial interest in the various transactions.

The Texas Supreme Court has recognized the logical inconsistency of the UPLC's position. If a corporation is engaged in the unauthorized practice of law, it does not matter whether the corporation is utilizing staff counsel, as in *Hexter,* or outside counsel. In both situations, the attorneys are the agents of the corporation. In *San Antonio Bar Association v. Guardian Abstract & Title Company, supra,* Guardian attempted to avoid *Hexter* by having the instruments prepared by the law firm of McQuown & McQuown, even though the facts were otherwise the same as in *Hexter.* The law firm charged separate fees for preparing the instruments, but nearly all of the corrective legal work was referred by Guardian to the McQuown law firm. The court concluded from the record that the title company was engaged in the unauthorized practice of law as in *Hexter,* because the outside attorneys were its agents and the title company had no direct financial interest in the corrective transactions. The court recognized that it was logically inconsistent to ban certain practices by a title company as being the unauthorized practice of law if staff attorneys are used as in *Hexter* but not ban the practices if outside attorneys are used.

*Hexter* is still the law. Section 1 of Article 430a is embodied in Article 2.01B(2). We believe that the rule in *Montgomery* is also still the law in Texas. Use of staff attorneys to represent insureds does not violate Article 2.01B(2) because the purpose of an insurance company is to indemnify its insureds for a fee. When the insurance company provides a staff or outside attorney to the insured, it is seeking to protect its own interests. Even if providing an attorney is the practice of law by the insurance company, that does not necessarily mean that it is the unauthorized practice of law. Based on the reasoning in *Montgomery* and *Hexter,* we hold that the use of staff attorneys to represent insureds, like the use of outside attorneys, is not the unauthorized practice of law because of the insurance company's direct financial interest in the litigation brought against its insureds by third parties.[15]

*Texas Penal Code § 38.123*

The UPLC next cites TEX. PENAL CODE ANN. § 38.123 (Vernon 2003) which defines certain acts as the "unauthorized practice of law" for purposes of criminal prosecution:

(a) A person commits an offense if, with intent to obtain an economic benefit for himself or herself, the person:

(1) contracts with any person to represent that person with regard to personal causes of action for property damages or personal injury;

* * *

(3) advises any person as to whether or not to accept an offered sum of money in settlement of claims for personal injuries or property damages;

---

**15.** As the UPLC pointed out to the trial court below, the statute repealing Article 430a stated that the act was being repealed because it:

[H]as no practical value for the suppression of unauthorized practice of law for the reason that the State Bar Act, subsequently enacted (Acts, 1939, Forty Sixth Legislature, Page 64) prohibits all persons not members of the State Bar from practicing law, and under the Constitution, the judicial department of the State government

has power to define the practice of law and by civil proceedings protect the public from its practice by laymen and corporations, and the further fact that the presence of said Act on the books has created, and tends to create, much confusion.

Act of May 19, 1949, 51st Leg., R.S., ch. 301, H.B. No. 209. Article 430a was repealed because it was unnecessary, not because the legislature wanted to change *Hexter* or *Montgomery.*

\* \* \*

(5) enters into any contract with a third person which purports to grant the exclusive right to select and retain legal counsel to represent the individual in any legal proceeding.

(b) This section does not apply to a person currently licensed to practice law in this state, another state, or a foreign country and in good standing with the State Bar of Texas and the state bar or licensing authority of any and all other states and foreign countries where licensed. . . .

TEX. PENAL CODE ANN. § 1.07(a)(38) (Vernon 2003) defines "[p]erson" to mean "an individual, corporation, or association."

██ When interpreting a statute, we seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex.Cr.App.1991). Under *Boykin*, we interpret an unambiguous statute literally, unless doing so would lead to an absurd result the legislature could not possibly have intended. Insurance companies are in the business of entering contracts with third persons, their insureds, that grant the right to the insurance company to retain legal counsel to represent the insured "in personal causes of action" against the insured. But if insurance contracts and the use of staff attorneys come within the literal language of Section 38.123, then so would contracts involving the use of outside attorneys. Because a literal reading of Section 38.123 leads to an absurd result in this case, we resorted to the legislative history. *Id.* at 785.

Section 38.12 (Barratry and Solicitation of Professional Employment),[16] Section 38.122 (Falsely Holding Oneself Out as a Lawyer),[17] and Section 38.123 (Unauthorized Practice of Law) were enacted

together as part of Senate Bill 1227, 73rd Leg., R.S., 1993 Tex. Sess. Law Serv. ch. 723, §§ 2 & 5. The Bill Analysis in SENATE COMM. ON JURISPRUDENCE, BILL ANALYSIS, 73rd Leg., S.B. 1227 (April 7, 1993), gave the background and purpose as:

*BACKGROUND*

Currently, in Houston, persons involved in motor vehicle accidents are being solicited to use the services of lawyers by wrecker drivers, law enforcement officers, ambulance and EMS personnel, and medical personnel. Additionally, those persons involved in the accident are solicited by phone by attorneys who received information through accident reports. Statistics suggest that up to 80 percent of all accident victims, and 100 percent of "obvious fault" accident victims are contacted whether or not injuries occur.

*PURPOSE*

As proposed, S.B. 1227 makes provisions and provides penalties for the offenses of barratry, falsely holding oneself out to be a lawyer, and the unauthorized practice of law.

There is nothing in the legislative history that even remotely suggests that the legislation was directed at insurance contracts. We hold that the insurance companies have not violated Section 38.123 by contracting with their insureds and using staff attorneys to represent those insureds.

*The Majority Rule*

Numerous cases and authorities have cited *Montgomery*. One treatise on insurance law states that the broad statutes prohibiting corporations from practicing law cannot be interpreted too literally:

---

**16.** TEX. PENAL CODE ANN. § 38.12 (Vernon 2003).

**17.** TEX. PENAL CODE ANN. § 38.122 (Vernon 2003).

[T]he line is not easy to draw. It has even been urged that a casualty insurer, in defending a suit brought against its policyholder, would be engaged in the unauthorized practice of law. That result, however was quickly reversed, the higher court holding, and properly so it would seem, that the agreement to defend and pay attorney's fees is purely collateral to the chief undertaking, which is the purpose of insurance, of paying judgments rendered against the insured.

Eric Mills Holmes, Holmes' Appleman on Insurance Law and Practice § 49.22 (2d ed.) (2002)(referring to *Utilities Ins. Co. v. Montgomery, supra*). The treatise then observes:

> The majority of authority facing the issue has similarly held that an insurer does not engage in the unauthorized practice of law by a corporation when it uses in-house counsel to represent an insured under a liability policy, [although] that conclusion is not unanimous.

At least 20 states and 1 federal circuit court have considered whether the use of insurance staff attorneys violates rules of professional ethics or constitutes the unauthorized practice of law.[18] All but North Carolina and Kentucky have concluded that the use of staff attorneys is permissible. Six of the state court decisions have cited *Montgomery* as supporting the majority rule, even though *Montgomery* involved the use of outside counsel. *See Gafcon, Inc. v. Ponsor & Associates*, 98 Cal.App.4th 1388, 120 Cal.Rptr.2d 392, 410 (2002); *Coscia v. Cunningham*, 250 Ga. 521, 299 S.E.2d 880, 882 (1983)(cited *Montgomery* for the proposition that the defense of the insured is within the purview of the insurance company's immediate affairs); *Oda v. Highway Insurance Company*, 44 Ill.App.2d 235, 194 N.E.2d 489, 495 (1963); *Cincinnati Insurance Company v. Wills*, 717 N.E.2d 151, 155 (Ind.1999); *In re Allstate Insurance Company*, 722 S.W.2d 947, 950 (Mo.1987); *Osborne v. Hartford Accident & Indemnity Co.*, 63 Tenn.App. 518, 476 S.W.2d 256, 267 (1971). Even *Gardner v. North Carolina State Bar*, 316 N.C. 285, 341 S.E.2d 517 (1986), which held that the use of staff attorneys constitutes the unauthorized practice of

---

**18.** *Joplin v. Denver–Chicago Trucking Co.*, 329 F.2d 396 (8th Cir.1964); *Gafcon, Inc. v. Ponsor & Associates*, 98 Cal.App.4th 1388, 120 Cal.Rptr.2d 392 (2002); *King v. Guiliani*, No. CV92–0290370–S, 1993 WL 284462 (Conn.Super.Ct. July 27, 1993); *In re Rules Governing the Conduct of Attorneys in Florida*, 220 So.2d 6 (Fla.1969); *Coscia v. Cunningham*, 250 Ga. 521, 299 S.E.2d 880 (1983); *Kittay v. Allstate Ins. Co.*, 78 Ill.App.3d 335, 33 Ill.Dec. 867, 397 N.E.2d 200 (1979); *Cincinnati Insurance Company v. Wills*, 717 N.E.2d 151 (Ind.1999); *American Insurance Association v. Kentucky Bar Association, 917 S.W.2d 568 (Ky.1996); In re Allstate Insurance Company*, 722 S.W.2d 947 (Mo.1987); *In re Weiss, Healey & Rea*, 109 N.J. 246, 536 A.2d 266 (1988); *Gardner v. North Carolina State Bar*, 316 N.C. 285, 341 S.E.2d 517 (1986); *Strother v. Ohio Casualty Insurance Co.*, 14 O.O. 139, 1939 Ohio Misc. LEXIS 1184 (Ct. Comm. Pleas 1939); *In re Youngblood*, 895 S.W.2d 322 (Tenn.1995); *Hardware Mut. Casualty Co. v. Higgason*, 175 Tenn. 357, 134 S.W.2d 169 (1939); Amendment to Rules Regulating the Florida Bar, Re: Rules of Professional Conduct No. SC02–1689 (Fla.S.Ct. January 23, 2003); and Final Report of the Board of Commissioners on the Unauthorized Practice of Law of the Supreme Court of Ohio in *Cincinnati Bar Association v. Allstate Insurance Company*, Case No. UPL 02–02 (Oct. 1, 2003). Ethics opinions include Alabama Ethics Op. RO–81–533 (1981); Alaska Bar Ethics Committee Op. 99–3 (1999); Arizona Ethics Op. 75–4 (1975); Cal. Ethics Op.1987–91 (1987); Colorado Formal Ethics Op. 91 (1993); Report of the Florida Bar Association's Special Commission on Insurance Practices II (2002); Illinois State Bar Ass'n, Advisory Opinion on Prof. Conduct, Op. No. 89–17 (1990); Michigan Bar Op. CI–1146 (1986); New Jersey Sup.Ct. Advisory Comm. on Unauthorized Practice, Op. 23, 114 N.J.L.J. 421 (1984); New York Bar Op. 109 (1969); and Virginia Bar Op. 60 & 598 (1985).

law, pointed out that Texas has a special rule for insurance companies and cited *Montgomery.*

Law professors have continued to cite *Montgomery* in support of such typical statements as:

> A number of jurisdictions permit representation of an insured by in-house counsel, but do so by special statute expressly designed to address this situation.

Nancy J. Moore, *The Ethical Duties of Insurance Defense Lawyers: Are Special Solutions Required?*, 4 CONN. INS. L.J. 259, 296 (1997). In Michael D. Morrison & James R. Old, Jr., *Economics, Exigencies and Ethics: Whose Choice? Emerging Trends and Issues in Texas Insurance Defense Practice*, 53 BAYLOR L. REV. 349, 395 (2001), the authors state:

> The question of whether an insurance company may properly employ salaried attorneys to represent insureds in claims litigation has been addressed by numerous jurisdictions through court decisions and ethics opinions.

The authorities cited by Morrison and Old include *Montgomery,* indicating that these authors also read *Montgomery* as authorizing the use of staff attorneys to represent insureds in Texas under the exception in Article 430a which was in force at the time of *Montgomery.*

Three of the cases from other states have expressly noted the logical inconsistency of an attempt to prevent an insurer from employing staff attorneys to represent insureds while allowing the insurer to retain outside counsel to represent insureds. *Cincinnati Insurance Company v. Wills, supra* at 159–62; *In re Allstate Insurance Company, supra* at 950; and *In re Youngblood, supra* at 328–29. Every argument by the UPLC, except one, would prevent outside attorneys from representing insureds if staff attorneys are prevented from representing insureds. The one

exception is its argument that an employer may direct the details of a staff attorney's representation of an insured and thereby interfere with his professional judgment. The employer does not have that right. *Johnson v. Brewer & Pritchard, P.C., supra.*

### Conclusion

■ The purpose behind prohibiting the unauthorized practice of law is to protect the public from the mistakes of those who are not properly trained and licensed to practice law. There is nothing in this record to demonstrate that staff counsel should not represent insureds. They are properly trained and licensed to practice law.

Potential ethical conflicts are inherent in the tripartite relationship, but there is no evidence in the record that staff attorneys face conflicts not faced by outside attorneys. Texas Committee on Professional Ethics Opinion Nos. 167 and 260 correctly concluded that the use of staff attorneys to represent insureds does not violate the ethics rules. Use of staff attorneys to represent insureds does not violate the current Texas Rules.

Use of staff attorneys to represent insureds is not the unauthorized practice of law. As *Montgomery* pointed out, the insurance company in providing an attorney to the insured is "seeking to protect its own interests." Even though the attorney does represent the insured, the insurance company is not practicing law because of the company's direct financial interest in the litigation against the insured. There is no violation of TEX. BUS. CORP. ACT ANN. art. 2.01B(2) because the purpose of an insurance company is to indemnify its insureds. The agreement to defend and pay attorney's fees is collateral to that purpose. TEX. PENAL CODE ANN. § 38.123 was enacted to prevent "wrecker

drivers, law enforcement officers, ambulance and EMS personnel, and medical personnel" from soliciting car accident victims to use certain lawyers. Section 38.123 was not directed at insurance companies.

 Consistent with the majority of state courts that have addressed the issue, we hold that insurance companies do not engage in the unauthorized practice of law by using staff counsel to represent their insureds and that the mere use of staff attorneys to represent insureds does not violate the Texas Disciplinary Rules of Professional Conduct.

### This Court's Ruling

We reverse and render judgment for American Home and Travelers. The injunction is dissolved. We reverse and remand for a determination of the attorney's fees owed by the UPLC.