In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00015-CV


______________________________




JAVIER D. CORONA, Appellant



V.



PILGRIM'S PRIDE CORPORATION, Appellee




 


On Appeal from the 276th Judicial District Court


 Camp County, Texas


Trial Court No. CV-05-178




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Chief Justice Morriss



O P I N I O N


 When Javier D. Corona personally guaranteed payment to Pilgrim's Pride Corporation of the
accounts of his newly formed Centex Foods Corporation, (1) he expected Centex to be successful in
distributing meat products in Austin and its environs. Business did not go as Corona expected, and
Centex accumulated a debt to Pilgrim's Pride of $25,538.37, representing thirteen past due invoices. 

 Pilgrim's Pride filed a suit on a sworn account against Centex and Corona. (2) The trial court
granted the motion for summary judgment filed by Pilgrim's Pride and dismissed Corona's
counterclaims. Corona appeals pro se. (3)

 We affirm the judgment of the trial court because we hold: (1) the trial court properly
dismissed Corona's counterclaims, (2) the trial court properly excluded Corona's summary judgment
affidavit  as  hearsay,  (3)  Corona  failed  to  raise  any  fact  issue  on  Pilgrim's  Pride's  claim  for
debt, (4) the trial court was not required to allow Corona to appear by telephone, (5) Corona's
complaint about discovery was not preserved for appellate review, and (6) Corona's complaint about
venue was not preserved for appellate review.

(1) The Trial Court Properly Dismissed Corona's Counterclaims

 Corona claims the trial court erred by dismissing his counterclaims. In response to Pilgrim's
Pride's lawsuit, Corona asserted counterclaims for breach of contract, negligence, fraud, conspiracy
to commit fraud, conversion, and malicious prosecution against Pilgrim's Pride. Corona claims that
Pilgrim's Pride employees allowed products to be ordered without authorization by Centex and
redirected deliveries to unauthorized locations. Corona also claims the suit brought by Pilgrim's
Pride was meritless.

 With the exception of the malicious prosecution claim, all of the counterclaims alleged by
Corona belong to Centex. The claims are all based on the allegation that Pilgrim's Pride employees
delivered products to unauthorized locations and the products were charged to Centex's account. 
Corona sought damages for injuries allegedly caused to Centex, a corporation of which Corona is
a shareholder. The Texas Supreme Court has repeatedly held a corporate shareholder cannot
personally recover damages for wrongdoing against the corporation. Wingate v. Hajdik, 795 S.W.2d
717, 719 (Tex. 1990); Commonwealth of Mass. v. Davis, 140 Tex. 398, 168 S.W.2d 216, 221 (1942)
(corporation and its shareholders are distinct legal entities). Further, Texas courts have consistently
held that a nonattorney may not appear pro se on behalf of a corporation. See, e.g., Kunstoplast of
Am., Inc. v. Formosa Plastics Corp., USA, 937 S.W.2d 455, 456 (Tex. 1996) (per curiam); Moore
by & Through Moore v. Elektro-Mobil Technik GMBH, 874 S.W.2d 324, 327 (Tex. App.--El Paso
1994, writ denied); cf. Am. Home Assur. Co. v. Unauthorized Practice of Law Comm., 121 S.W.3d
831, 839 (Tex. App.--Eastland 2003, pet. granted). Corona could not bring these counterclaims
either personally or on behalf of the corporation. (4) 

 Corona failed to allege facts sufficient to plead a case of malicious prosecution. Corona
claimed Pilgrim's Pride committed malicious prosecution by bringing suit against Corona on a
meritless claim. 

 To prevail in a suit alleging malicious prosecution of a civil claim, the plaintiff must
establish: (1) the institution or continuation of civil proceedings against the plaintiff;
(2) by or at the insistence of the defendant; (3) malice in the commencement of the
proceeding; (4) lack of probable cause for the proceeding; (5) termination of the
proceeding in plaintiff's favor; and (6) special damages.

 

Tex. Beef Cattle Co. v. Green, 921 S.W.2d 203, 207 (Tex. 1996). Corona's counterclaim for
malicious prosecution fails to allege any facts sufficient to establish the above elements. Corona
failed to allege any facts sufficient to constitute malice, lack of probable cause, or termination of the
proceedings in Corona's favor. The trial court did not err in dismissing Corona's counterclaims.

(2) The Trial Court Properly Excluded Corona's Summary Judgment Affidavit as Hearsay

 Corona submitted two affidavits as summary judgment evidence, one signed by Corona and
one signed by Jorge Suchomlinow. The trial court overruled Pilgrim's Pride's objections to
Suchomlinow's affidavit, but sustained the objections to Corona's affidavit. Corona argues the trial
court erred in not considering his summary judgment affidavit. In the affidavit, Corona states:

 I was informed by a previous employee of my corporation that some of my employees
have been receiving merchandise deliveries billed to Centex Foods Corporation. I was
told by witnesses that Pilgrim's Pride delivery drivers have been consistently
delivering merchandise invoiced to my company to unauthorized locations. 


At the summary judgment hearing, Corona stated the prior employee was not a legal resident and was
afraid to sign an affidavit. 

 We review a trial court's rulings in admitting or excluding evidence under an abuse of
discretion standard. Nat'l Liab. & Fire Ins. Co. v. Allen, 15 S.W.3d 525, 527-28 (Tex. 2000). Under
an abuse of discretion standard, we cannot overrule the trial court's decision unless the trial court
acted unreasonably or in an arbitrary manner, without reference to guiding rules or principles.
Beaumont Bank, N.A. v. Buller, 806 S.W.2d 223, 226 (Tex. 1991); Davis v. Huey, 571 S.W.2d 859,
861-62 (Tex. 1978). The affidavit in question consists entirely of hearsay. The trial court did not
abuse its discretion in excluding Corona's affidavit. See Tex. R. Civ. P. 166a(f); Tex. R. Evid. 802;
Einhorn v. LaChance, 823 S.W.2d 405, 410 (Tex. App.--Houston [1st Dist.] 1992, writ dism'd
w.o.j.) (op. on reh'g) (affidavits based solely on hearsay inadmissible as summary judgment evidence).

(3) Corona Failed to Raise Any Fact Issue on Pilgrim's Claim for Debt

 Corona argues the trial court erred in granting summary judgment in favor of Pilgrim's Pride
because there are genuine issues of material fact. Corona alleged negligence, fraud, breach of
contract, and conversion as affirmative defenses. The factual basis of the above defenses can be
summarized as alleging Pilgrim's Pride employees conspired with Centex employees to order goods
without authorization and to deliver said goods to unauthorized locations. In addition, Corona alleged
the defense of partial satisfaction.

 The standards of review for both a traditional motion for summary judgment and a
no-evidence motion for summary judgment are well established. When reviewing a traditional
summary judgment, we take as true all evidence favorable to the nonmovant and indulge every
reasonable inference and resolve any doubts in the nonmovant's favor. Limestone Prods. Distrib., Inc.
v. McNamara, 71 S.W.3d 308, 311 (Tex. 2002). Summary judgment is proper when the movant
establishes that there is no genuine issue of material fact and that the movant is entitled to judgment
as a matter of law. Tex. R. Civ. P. 166a(c); City of Houston v. Clear Creek Basin Auth., 589 S.W.2d
671 (Tex. 1979). A nonmovant will defeat a no-evidence summary judgment motion if the
nonmovant presents more than a scintilla of probative evidence on each element of his or her claim. 
King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003); Jackson v. Fiesta Mart, Inc., 979
S.W.2d 68, 70-71 (Tex. App.--Austin 1998, no pet.). More than a scintilla of evidence exists when
the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions." Merrell Dow Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). In a
summary judgment hearing, the trial court's decision is based on written pleadings and written
evidence rather than live testimony. See Tex. R. Civ. P. 166a(c). 

 To  obtain  summary  judgment  on  a  guaranty  agreement,  a  party  must  conclusively
prove: (1) the existence and ownership of the guaranty contract, (2) the performance of the terms of
the contract by plaintiff, (3) the occurrence of the condition on which liability is based, and
(4) guarantor's failure or refusal to perform the promise. Barclay v. Waxahachie Bank & Trust Co.,
568 S.W.2d 721, 723 (Tex. Civ. App.--Waco 1978, no writ). Pilgrim's Pride introduced summary
judgment evidence in the form of business records with the necessary business-records affidavit. 
Pilgrim's Pride's summary-judgment evidence conclusively established that Corona signed the
guaranty agreement for payment of Centex obligations to Pilgrim's Pride, that Centex owed Pilgrim's
Pride a balance of $25,538.37, that Pilgrim's Pride had demanded Corona pay the indebtedness of that
debt, and that Corona failed to do so. 

 In response, Corona presented the trial court with two affidavits as summary judgment
evidence. As referenced above, the trial court sustained Pilgrim's Pride's objections to Corona's
affidavit because it was entirely hearsay. Corona's remaining summary judgment evidence consisted
of the affidavit of Suchomlinow. Suchomlinow's affidavit provides in pertinent part:

 I witnessed PILGRIM'S PRIDE CORPORATION's delivery trucks unload many cases
of meat products at my place of business parking lot (El Dorado Meat Market, 5001
Airport Blvd[.], Austin, TX 78746). I witnessed the merchandise being personally
handed  to  then  CENTEX's  employee  Ismael  Deleon.  It  was  until  [sic] on  or
about May 20th, 2005 that I approached the delivery drivers and emphatically
prohibited them of making any further deliveries at my place of business since I finally
realized there was some suspicious activity going on between PILGRIM's delivery
drivers and Ismael Deleon. I told the delivery driver that I would report them if such
behavior would continue. 


Suchomlinow's affidavit merely provides some evidence that Centex employees received products
from Pilgrim's Pride at an "unauthorized" location. Suchomlinow's belief that the activity was
suspicious is less than a scintilla of evidence that the products delivered were not accepted and used
by Centex or that Centex was invoiced for any products it did not receive. There is no evidence of
negligence, fraud, breach of contract, (5) or conversion. 

 Corona also argues the debt was partially satisfied because he offered to tender assets of the
corporation to satisfy the outstanding debt. (6) There is no evidence in the record that Pilgrim's Pride
agreed to accept the corporate assets or received partial payment of the outstanding debt. Under the
terms of the guaranty agreement, Corona was an absolute guarantor of payment. Absolute guaranties
are conditioned solely on default of the principal debtor. Mid-South Telecomms. Co. v. Best, 184
S.W.3d 386, 391 (Tex. App.--Austin 2006, no pet.). An absolute guarantor is primarily liable and
waives any requirement that the creditor take action against the principal obligor as a condition
precedent to his or her liability on the guaranty. Hopkins v. First Nat'l Bank at Brownsville, 551
S.W.2d 343, 345 (Tex. 1977); Joseph Thomas, Inc. v. Graham, 842 S.W.2d 343, 345 n.2 (Tex.
App.--Tyler 1992, no writ). Because Corona was an absolute guarantor, Pilgrim's Pride was not
required to seek recovery from Centex before instituting suit against Corona.

 Corona also argues there are genuine issues of material fact concerning whether Pilgrim's
Pride permitted Centex to exceed the contractual credit limit. Corona, though, did not expressly plead
a defense based on a material alteration of the contract. On its application for credit, Centex applied
for a credit limit of $20,000.00, but Pilgrim's Pride allowed Centex to accumulate a debt of
$25,538.37. 

 Corona did not adequately raise this issue in any response before the trial court. A summary
judgment cannot be reversed on appeal due to an issue that was not expressly and timely presented
to the trial court by written response or other document. Tex. R. Civ. P. 166a(c); see Clear Creek
Basin Auth., 589 S.W.2d at 677. Corona mentions that the credit limit was exceeded while asserting
negligence as an affirmative defense. The amended response provides as follows in pertinent part:

 3. Defendants claim negligence as an affirmative defense and do not recognize
the amount on the alleged defaulted invoices and claims that Plaintiff's negligent
behavior created and compounded the alleged default. Additionally, during this
alleged default the credit line amount was raised unilaterally by Plaintiff. Defendants
never requested nor authorized such an increase so therefore it is not binding.


The fact the credit limit was exceeded is contained in a paragraph alleging negligence. Corona failed
to provide any legal argument as to the effect of exceeding the credit limit. 

 The above quotation was insufficient to expressly present the defense for a material alteration
of the contract to the trial court. While the quotation probably was sufficient to inform the trial court
of the facts complained of, the quotation is insufficient to inform the trial court of any legal effect of
those facts. We are prohibited from considering grounds the nonmovant failed to expressly present
to the trial court in a written response. Brown v. Reeter, 170 S.W.3d 151, 154 (Tex. App.--San
Antonio 2005, no pet.). To the extent Corona may have had a partial defense for a material alteration
of the contract, this issue is not preserved for our review. Further, Corona has failed to provide this
Court with any legal argument or authority as to the effect of exceeding the credit limit. As such, this
issue was also inadequately briefed on appeal. See Tex. R. App. P. 38.1.

 Because there are no genuine issues of material fact, the trial court did not err in granting
summary judgment in favor of Pilgrim's Pride.

(4) The Trial Court Was Not Required to Allow Corona to Appear by Telephone

 Corona argued that, because of his medical condition, he could not physically appear in Camp
County. Although not bedridden, Corona argued extended stays in a wheelchair could pose a severe
health risk because he is subject to decubitus ulcers. Corona argues the trial court was required to
grant his request under the Americans with Disabilities Act (ADA). The trial court permitted Corona
to attend the summary judgment hearing by telephone. At the hearing, the trial court informed Corona
he would not be allowed to continue to appear by telephone. 

 The trial court did not abuse its discretion in denying Corona's motion to appear by telephone. 
The Texas Rules of Judicial Administration permit, but do not require, courts to allow parties to
attend pretrial hearings via telephone. See Tex. R. Jud. Admin. 7a(6)(b). Title II of the ADA
provides that "no qualified individual with a disability shall, by reason of such disability, be excluded
from participation in or be denied the benefits of the services, programs, or activities of a public
entity, or be subjected to discrimination by any such entity." 42 U.S.C.A. § 12132 (West 2007). To
state a claim under Title II, Corona must allege that (1) he is a "qualified individual with a disability";
(2) he is being excluded from participation in or being denied the benefits of some "services,
programs, or activities" by reason of his disability; and (3) the entity which provides the service,
program, or activity is a public entity. See id.; Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 283 (1st
Cir. 2006); Soto v. City of Newark, 72 F. Supp. 2d 489, 492 (D.N.J. 1999). The ADA requires public
entities to provide "meaningful access" to their programs and services. Chaffin v. Kan. State Fair Bd.,
348 F.3d 850, 857 (10th Cir. 2003); see also Randolph v. Rodgers, 170 F.3d 850, 858 (8th Cir. 1999). 

 Under regulations promulgated by the Department of Justice, public entities are required to
"make reasonable modifications in policies, practices, or procedures when the modifications are
necessary to avoid discrimination on the basis of disability . . ." 28 C.F.R. § 35.130(b)(7) (2003);
see 42 U.S.C.A. § 12134(a) (West 2003). The regulations also provide:

 (a) A public entity shall take appropriate steps to ensure that communications with
applicants, participants, and members of the public with disabilities are as effective
as communications with others.

 (b)(1) A public entity shall furnish appropriate auxiliary aids and services where
necessary to afford an individual with a disability an equal opportunity to participate
in, and enjoy the benefits of, a service, program, or activity conducted by a public
entity.


 (2) In determining what type of auxiliary aid and service is necessary, a public entity 

 shall give primary consideration to the requests of the individual with disabilities.


28 C.F.R. § 35.160 (2008). However, a public entity is not required "to take any action that it can
demonstrate would result in a fundamental alteration in the nature of a service, program, or activity
or in undue financial and administrative burdens." 28 C.F.R. § 35.164 (2008).

 Corona has failed to cite any authority, nor are we aware of any, for the proposition that a
violation of the ADA voids an otherwise valid judgment. A person alleging discrimination under
Title II of the ADA has the remedies, procedures, and rights set forth in Section 505 of the
Rehabilitation Act of 1973. 42 U.S.C.A. §§ 12131-65 (West 2003); 42 U.S.C.A. §§ 2000e-5, 2000e-16 (West 2003); 29 U.S.C.A.  §  794a  (West 2003);  Am.  Jur.  2d  Americans  with  Disabilities  Act
 Analysis  and Implications § 307 (LEXIS 2007).

 It is not necessary for us to decide whether Corona's due-process rights were violated by the
alleged violation of the ADA. Assuming that a violation of the ADA could void a judgment, the First
District Court of Appeals has held the claim is an affirmative defense that must be pleaded and proved
to avoid waiver. In re C.M., 996 S.W.2d 269, 270 (Tex. App.--Houston [1st Dist.] 1999, no pet.). 
Corona failed to plead an affirmative defense based on a violation of the ADA. Even if Corona's
motion to transfer venue pled an affirmative defense based on a violation of the ADA and assuming
a violation of the ADA would void a judgment, Corona has failed to prove the trial court's actions
violated the ADA. The trial court took judicial notice the courthouse was wheelchair accessible, and
Corona failed to prove he could not access the courtroom. Although Corona did provide some
medical records to prove he is a paraplegic, Corona failed to provide the trial court with any evidence
he could not travel to Camp County to attend court proceedings. A public entity is not required to
grant the specific accommodation requested, so long as the accommodation granted is adequate. The
record does not establish the accommodation provided, i.e., a wheelchair accessible courtroom, was
inadequate. Further, the accommodation requested by Corona might fundamentally alter the
proceedings. See McLaughlin v. Pyles, No. 99CA0013, 1999 Ohio App. LEXIS 5556 (Ohio Ct. App.
1999) (not designated for publication) (refusal to allow party to appear by telephone did not violate
ADA). Corona has not shown the trial court abused its discretion in not granting his motion to appear
by telephone.

(5) Corona's Complaint About Discovery Was Not Preserved for Appellate Review

 Corona filed a motion to compel discovery March 1, 2006. According to Corona, Pilgrim's
Pride ignored discovery requests made the prior November, including interrogatories, requests for
disclosure, requests for production, and requests for admissions. Corona did not attempt to secure
a ruling on his motion to compel. At the hearing for summary judgment, Corona complained about
Pilgrim's Pride not responding to his discovery requests. The trial court noted there was no record 
Corona had ever requested a hearing. Corona admitted he had not requested a hearing and stated he
"was under the impression that once you filed a motion that automatically the motion would be
docketed." At the hearing, Corona did not explicitly request a ruling on the motion.

 The Texas Supreme Court has held "the failure to obtain a pretrial ruling on discovery disputes
that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that
conduct." Remington Arms Co. v. Caldwell, 850 S.W.2d 167, 170 (Tex. 1993). This is in accord with
the general rule that, as a prerequisite to a complaint for appellate review, the record must show that
the trial court, either expressly or implicitly, ruled on the motion. Tex. R. App. P. 33.1(a)(2)(A). 
Admittedly, there is a significant difference between a hearing on a motion for summary judgment
and a trial. But the failure "to obtain a pre-trial ruling on any discovery dispute existing before
commencement of summary judgment proceedings constitutes a waiver" of any claim for relief. 
White v. Cole, 880 S.W.2d 292, 296 (Tex. App.--Beaumont 1994, writ denied). We agree. Corona
failed to present the motion to compel discovery to the trial court until the summary judgment
hearing. At the hearing, Corona did not request the trial court rule on the motion. Further, Corona
did not file a motion for continuance. See Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d 640, 647
(Tex. 1996) ("When a party contends that it has not had an adequate opportunity for discovery before
a summary judgment hearing, it must file either an affidavit explaining the need for further discovery
or a verified motion for continuance."). Corona did not preserve error, if any, for our review.

(6) Corona's Complaint About Venue Was Not Preserved for Appellate Review

 Corona filed a motion to transfer venue October 17, 2005, alleging that defending himself in
Camp County, Texas, was too burdensome because he is a paraplegic. According to Corona,
extended stays in a wheelchair could pose a severe health risk because he is subject to decubitus
ulcers. Corona states he filed, in December 2005, a copy of his medical discharge summary. The
only medical discharge summary we have located in the record was attached to his amended motion
to transfer venue, which was filed after the trial court had rendered summary judgment in favor of
Pilgrim's Pride. The medical discharge corroborates Corona's medical condition, but it does not
contain any information establishing Corona was medically unable to appear in Camp County. 

 Corona failed to preserve any error for our review. It was Corona's responsibility to request
a hearing and obtain a ruling on the motion to transfer venue. See Tex. R. Civ. P. 87. Corona waived
any issue concerning venue by not requesting a hearing or ruling. See, e.g., Cliff Jones, Inc. v.
Ledbetter, 896 S.W.2d 417, 418-19 (Tex. App.--Houston [1st Dist.] 1995, no writ). 

 Even if Corona had preserved error, Corona has not shown the trial court erred. The
guaranty agreement contained a forum selection clause establishing Camp County, Texas, as the
appropriate venue and waiving "any objections to the above-referenced jurisdiction and venue." The
Texas Supreme Court has held "enforcement of a forum-selection clause is mandatory, absent a
showing that 'enforcement would be unreasonable and unjust or that the clause was invalid due to
fraud or overreaching.'" Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 793 (Tex.
2005); see In re Automated Collection Techs., 156 S.W.3d 557, 559 (Tex. 2004) (per curiam); In re
AIU Ins. Co., 148 S.W.3d 109, 115 (Tex. 2004) (adopting the standards applied by the United States
Supreme Court in M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972)). The party opposing
enforcement of a forum selection clause bears the burden of showing enforcement would be
unreasonable or unjust, or that the clause is invalid. Automated Collection Techs., 156 S.W.3d at 559. 
Camp County, Texas, is not "remote alien forum." See AIU Ins. Co., 148 S.W.3d at 114. Even if
Corona had preserved error, he has not shown either that the forum selection clause is unenforceable
or that he was medically unable to attend proceedings in Camp County.

 The trial court did not err in dismissing Corona's counterclaims, and Corona raised no genuine
issue of material fact on Pilgrim's Pride's claims against him. Even if a violation of the ADA would
result in a void judgment, Corona failed to plead such a defense and failed to show that an ADA
violation occurred. Because Corona's affidavit was entirely hearsay, the trial court did not abuse its
discretion in sustaining Pilgrim's Pride's objection to it. Corona failed to preserve any error on his
motions to compel discovery and to change venue. 





 For the reasons stated, we affirm the trial court's judgment. (7)



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 10, 2007

Date Decided: January 18, 2008

1. Corona formed Centex Foods Corporation with business partner Ismael DeLeon.
2. The suit against Centex was severed because Centex declared bankruptcy. 
3. The law is well settled that "[a] party proceeding pro se must comply with all applicable
procedural rules" and is held to the same standards as a licensed attorney. Weaver v. E-Z Mart
Stores, Inc., 942 S.W.2d 167, 169 (Tex. App.--Texarkana 1997, no pet.). "On appeal, as at trial,
the pro se appellant must properly present his or her case." Strange v. Cont'l Cas. Co., 126 S.W.3d
676, 678 (Tex. App.--Dallas 2004, pet. denied). We review and evaluate pro se pleadings with
liberality and patience, but otherwise apply the same standards applicable to pleadings drafted by
lawyers. Foster v. Williams, 74 S.W.3d 200, 202 n.1 (Tex. App.--Texarkana 2002, pet. denied). 
4. We also note Centex had declared bankruptcy. The record does not contain any indication
that the bankruptcy trustee had authorized these counterclaims. Further, Centex had been severed
from this lawsuit at the time the counterclaims were filed.
5. We note Corona claims Pilgrim's Pride deviated from the standard course of dealing between
the parties by not notifying Corona by telephone of the past due invoices or the fact that Centex's
credit limit had been exceeded. Corona, though, presented no evidence to support this allegation. 
"Pleadings do not constitute summary judgment proof." Clear Creek Basin Auth., 589 S.W.2d at
678. Even if there was evidence to support this allegation, Corona has failed to provide this Court
with legal authority establishing this deviation as a defense to his obligations under the guaranty
agreement. See Tex. R. App. P. 38.1.
6. We note Corona alleges the "bankruptcy trustee has offered payment in the form of the
corporation's assets," but fails to provide this Court to a cite in the record in support of this
statement. The record does contain a letter to Pilgrim's Pride where Corona offers to tender the
corporation's assets to satisfy the debt. We will assume, without deciding, that the letter constitutes
summary judgment evidence.
7. Corona also alleges the trial court engaged in ex parte communications with Pilgrim's Pride,
but there is no support in the record for this claim.


"sum @10 21600 0"/>
 
 
 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-10-00162-CR

                                                ______________________________

 

 

                                      VAUGHN RAY BELL,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 336th
Judicial District Court

                                                             Fannin County, Texas

                                                      Trial Court No. CR-09-23218

 

                                                   
                                               

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                    Opinion by Chief Justice Morriss

                                                 Dissenting Opinion
by Justice Carter








                                                                   O P I N I O N

 

            In light of the Texas Court of
Criminal Appeals recent opinion in Snowden
v. State, No. PD-1524-10, 2011 Tex. Crim. App. LEXIS 1321 (Tex. Crim. App.
Sept. 28, 2011) (designated for publication), we have withdrawn our previous
opinion in this case issued September 14, 2011, and substitute this
opinion.  See Tex. R. App. P.
19.1.

            At some point during Vaughn Ray Bells
Fannin County jury trial for possessing the drug Ecstasy[1]and
without the record reflecting any action or threat by Bell that warranted such actionsome
form of physical restraint was placed on his person for the remainder of his
trial.[2]

            On appeal, Bell asserts that the
evidence is insufficient to link him to the contraband and that the trial court
reversibly erred in shackling Bell during trial.  We conclude (1) sufficient evidence links
Bell to the Ecstasy and (2) shackling Bell during trial, without individualized
evidence of danger from Bell, was error, but (3) the shackling error was
harmless.

(1)        Sufficient
Evidence Links Bell to the Ecstasy

            Bell argues the evidence is legally
insufficient to link him to the contraband. 
The State responds that the evidence is sufficient to tend to connect
Bell to the contraband.

            In evaluating legal sufficiency, we
review all the evidence in the light most favorable to the trial courts
judgment to determine whether any rational jury could have found the essential
elements of the offense beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing Jackson v. Virginia, 443 U.S. 307, 319 (1979));
Hartsfield v. State, 305 S.W.3d 859,
863 (Tex. App.Texarkana 2010, pet. refd). 
Our rigorous legal sufficiency review focuses on the quality of the
evidence presented.  Brooks, 323 S.W.3d at 917 (Cochran, J., concurring).  We examine legal sufficiency under the
direction of the Brooks opinion,
while giving deference to the responsibility of the jury to fairly resolve
conflicts in testimony, to weigh the evidence, and to draw reasonable
inferences from basic facts to ultimate facts. 
Hooper v. State, 214 S.W.3d 9,
13 (Tex. Crim. App. 2007) (citing Jackson,
443 U.S. at 31819); Clayton v. State,
235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

            At trial, the State was required to
prove that Bell exercised control, custody, management, or care over the Ecstasy
and that he knew the matter possessed was contraband.  See
Evans v. State, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); see also Tex. Penal Code Ann. § 1.07(a)(39) (West 2011).  Mere presence at the location where drugs are
found is insufficient, by itself, to establish actual care, custody, or control
of those drugs.  Evans, 202 S.W.3d at 162. 
Presence or proximity to drugs, however, when combined with other direct
or circumstantial evidence, may be sufficient to establish control, management,
custody, or care if the proof amounts to more than a strong suspicion or
probability.  Id.  The affirmative links
rule is designed to protect the innocent bystander from conviction based
solely upon his fortuitous proximity to someone elses drugs.  Poindexter
v. State, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005).

When
the accused is not in exclusive possession of the place where the substance is
found, it cannot be concluded that the accused had knowledge of and control
over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband.

 

Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel
Op.] 1981).

            One or more of the factors from the
following nonexclusive list have been used to establish a persons possession
of contraband:

(1) the contraband was in plain view or recovered from an
enclosed place; (2) the accused was the owner of the premises or the place
where the contraband was found; (3) the accused was found with a large amount
of cash; (4) the contraband was conveniently accessible to the accused; (5) the
contraband was found in close proximity to the accused; (6) a strong residual
odor of the contraband was present; (7) the accused possessed other contraband
when arrested; (8) paraphernalia to use the contraband was in view, or found on
the accused; (9) the physical condition of the accused indicated recent
consumption of the contraband in question; (10) conduct by the accused
indicated a consciousness of guilt; (11) the accused attempted to flee; (12)
the accused made furtive gestures; (13) the accused had a special connection to
the contraband; (14) the occupants of the premises gave conflicting statements
about relevant matters; (15) the accused made incriminating statements
connecting himself or herself to the contraband; (16) the quantity of the
contraband; and (17) the accused was observed in a suspicious area under
suspicious circumstances.

 

Muckleroy v. State, 206 S.W.3d 746, 748 n.4 (Tex. App.Texarkana
2006, pet. refd); see Evans, 202
S.W.3d at 162 n.12.  The number of links
present is not as important as the degree to which they tend to link the
defendant to the controlled substance.  Taylor v. State, 106 S.W.3d 827, 831
(Tex. App.Dallas 2003, no pet.).

            While on patrol, Kevin Sanmann, a trooper
with the Texas Department of Public Safety, noticed the vehicle driving
immediately behind him lacked a front license plate and conducted a traffic
stop.  After initiating contact with the
driver, Sanmann detected a moderate odor of marihuana in the vehicle.  The driver of the vehicle informed Sanmann
that he did not have a drivers license. 
After questioning the driver outside the vehicle, Sanmann approached
Bell, who was still sitting in the passenger seat.  Sanmann observed marihuana residue on both
sides of [Bells] legs and a little bit right in the center, between his legs.  Sanmann then requested Bell to step out of
the vehicle and conducted a warrant check using Bells name and date of
birth.  The warrant check discovered the
existence of a warrant for Bells arrest. 
Sanmann conducted a search of the vehicle and discovered marihuana
residue on the passenger seat and passenger floorboard, as well as a pill
bottle located between the console and the passenger seat.  The pill bottles contained pills with a stamp
resembling a fish.  Sanmann testified
pills containing stamps that resemble objects or images are usually Ecstasy.  Neither Bell nor the driver accept[ed]
responsibility for the pill bottle.  Due
to the position of the pill bottle, Sanmann arrested Bell. 

            In addition to Bells presence at
the scene, there are multiple factors linking Bell to the Esctasy. Bell was closer
to the contraband and the contraband was more accessible to Bell.  The pill bottle was shoved down between the
console and the passenger seat.  The pill
bottle was in plain view.  Sanmann
testified that the top quarter of the pill bottle was exposed and that it could
be seen outside the vehicle.  Bell
possessed other contraband, marihuana, in the same vicinity as the Esctasy.  Besides the small amount of marihuana residue
observed on the passenger seat,[3] Sanmann testified [j]ust
very little residue was on Bells clothes. 
Sanmann testified he did not discover any marihuana residue on the
drivers side of the vehicle.  The jury
could have reasonably concluded Bell made furtive gestures.  While questioning the driver, Sanmann
observed Bell, who was a passenger in the vehicle, inside the car, moving
around.  Although the record does not
conclusively establish these gestures were furtive, a rational juror could have
concluded they were.[4]  Bell owned or had a greater right of
possession of the vehicle where the contraband was located.  Sanmann testified that the car belonged to Bells
wife, Tanya.[5]  

            Viewing these factors in the light
most favorable to the verdict and since it was within the purview of the jury
to weigh credibility and conflicts in the evidence, we conclude that a rational
juror could find the essential elements of the offense beyond a reasonable
doubt.  The evidence supporting Bells
conviction was sufficient to show Bell had control, management, custody, or
care over the Esctasy.

(2)        Shackling Bell During Trial, Without Individualized Evidence of Danger
from Bell, Was Error

 

            Bell also argues that his rights to
due process and presumption of innocence were violated by his being restrained
during trial.  Bell asserts that the
trial court has a routine practice of shackling all criminal defendants who are
in custody.

            After the trial on the merits began,
but before the conclusion of the guilt/innocence phase, the trial court ordered
Bell shackled.  The trial courts
statements on the record strongly suggest its routine practice is to restrain
all criminal defendants who have not been released on bond.  The trial court stated, Everybody who is in
custody has the same necessity of restraint.[6]  With admirable candor,[7]
the State conceded at oral argument that the trial court routinely restrains
all criminal defendants who have not been released on bond.[8]

            In its brief, the State concedes the
trial court erred by requiring Appellant to be shackled without finding a particularized
reason for shackling that was specific to Appellant.  There is a good reason for this
concessionthe law is well established that routine shackling of criminal
defendants is prohibited.  The law has
long forbidden routine use of visible shackles during the guilt phase.  Deck v.
Missouri, 544 U.S. 622, 626 (2005).

            Almost ninety years ago, the Texas
Court of Criminal Appeals stated:

[I]f
the record discloses no good reason for having the prisoner manacled during the
trial the same will be cause for reversal; on the other hand, if, in the sound
discretion of the court, it appears necessary to retain his shackles to prevent
the escape or self-destruction of the prisoner, or to prevent him from injuring
bystanders or officers of the court, or if necessary to maintain a quiet and
peaceable trial, the court may try the prisoner without having the shackles
removed; his action being subject to the closest scrutiny and review by the
appellate court.

 

            . . . .

 

            We desire to make it perfectly plain
that we regard a trial with the prisoner in irons as obnoxious to the spirit of
our laws and all ideas of justice, and it is only when the record brings the
case clearly within one of the rare exceptions that we would consent for a
conviction to stand.  Before a judge
should permit a case to proceed under such circumstances, he should be very
sure of his ground.

 

Gray v. State,
268 S.W. 941, 94950 (Tex. Crim. 1924) (op. on rehg).  This general rule has been reaffirmed
repeatedly.

            The Fourteenth Amendment to the
United States Constitution and Article I, Section 19 of the Texas Constitution
guarantee criminal defendants the right to a fair trial.  U.S.
Const. amend. XIV; Tex. Const.
art. I, § 19; Wynn v. State, 219
S.W.3d 54, 59 (Tex. App.Houston [1st Dist.] 2006, no pet.).  The use of restraints, such as shackles,
cannot be justified based on a general appeal to the need for courtroom
security or simple reference to the severity of the charged offense.  Long v.
State, 823 S.W.2d 259, 283 (Tex. Crim. App. 1991).  The appearance of a defendant in shackles
before a jury during the guilt/innocence portion of trial, as well as the
punishment phase,[9] can violate the defendants
Fifth and Fourteenth Amendment rights to due process.  Deck,
544 U.S. at 62934 (2005).  Visible
shackling undermines the presumption of innocence and the related fairness of
the factfinding process.  Id. at 630.  In addition to undermining the presumption of
innocence, visible[10] shackling can interfere
with the accuseds ability to communicate with his lawyer, ability to participate
in his own defense[,] and affront[s] the dignity and decorum of judicial
proceedings that the judge is seeking to uphold.  Id.
at 63031.  For these reasons, shackling
is called for only in rare circumstances, and the record must detail the
grounds for such action.  Cooks v. State, 844 S.W.2d 697, 722
(Tex. Crim. App. 1992); Gray, 268
S.W. at 950.

            Before restraining a defendant at
trial, a trial court must set forth with specificity the reasons supporting its
decision to restrain the defendant.  Cooks, 844 S.W.2d 722; Long, 823 S.W.2d at 282 (the record
must clearly and affirmatively reflect the trial judges reasons therefor); Marquez v. State, 725 S.W.2d 217, 227
(Tex. Crim. App. 1987).  Only in rare
circumstances is shackling called for, and in such event, the record must
detail the grounds for such action.  Long, 823 S.W.2d at 282; Jacobs v. State, 787 S.W.2d 397, 407
(Tex. Crim. App. 1990); Marquez, 725
S.W.2d at 227.  Even if a trial court
does not err in ordering shackles, all efforts must be made to ensure the jury
does not view the defendant in shackles. 
Long, 823 S.W.2d at 282; Ziolkowski v. State, 223 S.W.3d 640, 643
(Tex. App.Texarkana 2007, pet. refd).

            On appeal, the role of an appellate
court is to determine whether the trial court erred in ordering the restraints.  Long,
823 S.W.2d at 282.  Even in the face of error, reversal may not
be called for if such was harmless.  Cooks, 844 S.W.2d at 723; Long, 823 S.W.2d at 283.  In this case, the record fails to reveal any
reasons, other than a general concern for courtroom safety and general concern
that a criminal defendant might flee, to justify the use of restraints.  The trial court did not base its decision on
any evidence that Bell had previously committed violent acts, that Bell was
likely to flee, or that Bell had otherwise disrupted the trial.[11]

            Certainly courtrooms are places
where violence can occur.[12]  Our role is not to second guess the trial
courts discretion in controlling the courtroom and ensuring the safety of the
litigants, participants, and witnesses in attendance.  If a criminal defendant has acted in a manner
providing justification for restraints, it is well within the trial courts
sound discretion to order such defendant restrained during trial.  A trial court, though, abuses its discretion
when the court restrains a criminal defendant without reasons, on the record,
specific to that defendant.  Because the
record in this case fails to contain any justification for the shackling beyond
a general concern for courtroom safety, the shackling of Bell was error.

(3)        The
Shackling Error Was Harmless

            Bell argues, citing Deck, 544 U.S. at 62934, that the State
has the burden to establish beyond a reasonable doubt that the error was
harmless.  Because there is no evidence
the error did not result in harm, Bell argues the error was reversible.  In Deck,
the United States Supreme Court concluded that the lack of evidence showing no
harm mandated a reversal.  Id. at 634.  As noted above, Deck concerned visible restraints. 
The United States Supreme Court did not address whether the same
standards for harmless error would apply if the restraints are not perceived by
the jury.  We conclude Deck is distinguishable from this case
due to the fact that there is no evidence, in this case, that the restraints
were perceived by the jury.  To the
extent the tests may differ, we will evaluate the effect of the error in this
case under the Chapman test,[13] as codified by Rule 44.2(a)
of the Texas Rules of Appellate Procedure as
interpreted by Texas caselaw.

            In our original opinion in this
case, we used the factors announced in Harris
v. State, 790 S.W.2d 568 (Tex. Crim. App. 1989).  In Harris,
the Texas Court of Criminal Appeals provided the following guidance:

[T]he
court should examine the source of the error, the nature of the error, whether
or to what extent it was emphasized by the State, and its probable collateral
implications.  Further, the court should
consider how much weight a juror would probably place upon the error.  In addition, the Court must also determine
whether declaring the error harmless would encourage the State to repeat it
with impunity.  

 

Id.
at 58788.

            In Motilla v. State, the Texas Court of Criminal Appeals clarified
that overwhelming evidence of guilt, while not determinative, is a factor that
can also be considered.  78 S.W.3d 352,
35657 (Tex. Crim. App. 2002) (explaining discussion in Harris concerning weight a juror would probably place on the error
factor).  In Mason v. State, the Texas Court of Criminal Appeals held the
factors announced in Harris are not applicable to Rule 44.2(b) of the Texas
Rules of Appellate Procedure harmless error analysis of nonconstitutional
errors.  322 S.W.3d 251, 258 n.10 (Tex.
Crim. App. 2010) (noting that the Harris factors might still be applicable in
Rule 44.2(a) analyses).

            Since our original opinion was
released, the Texas Court of Criminal Appeals has announced the elimination of
two of the Harris factors:  the source of the error and whether declaring
the error harmless would encourage repetition of the error with impunity.  Snowden,
2011 Tex. Crim. App. LEXIS 1321.  The
court reasoned that the above two factors were punitive and that Harris erred in including within its
ambit any concern for the integrity of future trials.  Id.
at *17.  The court emphasized the inquiry
should adhere strictly to the question of whether the error committed in a
particular case contributed to the verdict obtained in that case.  Id.  The Texas Court of Criminal Appeals, though,
did confirm that the remaining Harris
factorsthe nature of the error, whether the error was emphasized by the State,
the probable implications of the error, and the weight the jury would likely
have assigned to it in the course of its deliberationscontinue to be valid
considerations.  Id. at *18.  The court,
though, noted these factors are not exclusive considerations in any particular
case and our inquiry should be whether, or to what extent, the error may have
contributed to the conviction.  Id.

            The first remaining factor is the
nature of the error.  The error in this
case violates well established constitutional rights.  Conducting a trial where the defendant is in
shackles, without a particularized showing of the need for the shackles in that
defendants case, is obnoxious to the spirit of our laws and all ideas of
justice.  Ziolkowski, 223 S.W.3d at 643 (quoting Gray, 268 S.W. at 950).  We
continue to believe that the violation of a well established constitutional
right adversely affects the integrity of the process leading to a
conviction.  In the pre-Snowden analysis, this factor would
strongly favor a finding of reversible error. 
Given the Snowden rationale,
however, our harm analysis should assess just the effect of the error on this
particular verdict or result.  Although
obnoxious to the spirit of our laws, the nature of this error did not
contribute to the judgment in this case. 
This factor weighs neither for nor against a finding of harm.

            The second factor is the extent the
error was emphasized by the State.  We
have not been directed to anywhere in the record that the State emphasized the
error in any manner.  Bell argues the
State moved one of the briefcases shielding the shackles from the jurys view
when it used it as a demonstrative aid. 
The record does reflect that the State used a briefcase as a
demonstrative aid, but the record does not reflect that this briefcase was one
of the briefcases blocking the shackles from the jurys view.[14]  We have not been directed to anywhere in the
record the State made a reference to or otherwise drew attention to the
defendants restraints.  Our own review
of the record has not revealed any such reference.  Clearly, the State did not emphasize the
error or seek in any way to benefit from the error.  This factor weighs strongly in favor of a
finding that the error is not harmful.

            The third factor is the weight a
juror would probably place on the error, assuming he or she was aware of the
error.  In this connection, we should
also consider whether the evidence was overwhelming as well as the character of
the error and how it might be considered in connection with other evidence in
the case.  Motilla, 78 S.W.3d at 359. 
Although the evidence of guilt was sufficient, the evidence linking Bell
to the contraband was not overwhelming. 
The record, though, is silent on whether the jury perceived the
shackles.  In fact, the record does
contain indications that steps were taken to keep the jury from perceiving the
shackles.  We conclude that this factor
does not weigh for a finding of harm.

            The fourth factor is the errors
probable collateral consequences.  This
factor requires us to contemplate such things as the disparaging of a sole defense,
as well as a probable affect on the harshness of the punishment.  Higginbotham
v. State, 807 S.W.2d 732, 737 (Tex. Crim. App. 1991).  As noted above, the affirmative links,
although sufficient, were not overwhelming. 
Bells main defense was that the contraband did not belong to him.  It should be contemplated that the
restraints, if perceived by the jury, could have alleviated some lingering
doubts the jury had concerning whether Bell possessed the contraband.  While Bell had an extensive criminal history,
here he received the maximum sentence available.  Again, though, because the record is silent
on whether the jury perceived the shackles, and steps were taken to avoid the
jury perceiving them, we do not weigh this factor for a finding of harm.

            After careful consideration of the
above factors, we conclude the error in this case did not result in harm to
this defendant in this case.  The lack of
emphasis placed on the error by the State weighs strongly against a finding of
harm, and the remaining factors do not suggest a finding of harm.  The Texas Court of Criminal Appeals has
instructed that our inquiry must be focused on whether the error may have
contributed to this defendants conviction. 
We conclude, beyond a reasonable doubt, that the error by the trial
court did not contribute to the judgment in this case.

            For the reasons stated, we affirm.

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

 

 

 

 

 

DISSENTING OPINION

 

            What is the
appellate courts duty when it is clear that a trial court deliberately and
repeatedly violates well-known and established constitutional rights of those
accused of a crime?  We must eradicate
the practice.  The majority opinion fails
to do this and has now reversed its course based on a recent Texas Court of
Criminal Appeals opinion, Snowden v.
State.[15]  I believe this Courts original opinion is
sound.  The stated reason for this switch
is that Snowden no longer allows an
appellate court to consider, on the issue of harmfulness of error, whether the
failure to reverse for an admitted constitutional error would encourage the
State to repeat that error with impunity. 
      

            I do not
think Snowden applies in this
case.  In Snowden, the error was committed by the States attorney, whereas
here the action found to be a constitutional error (placing a chain connecting
two iron ankle rings on the ankles of the defendant during jury trial) was the
action of the trial court.  In Snowden, the error was the improper
argument of the States counsel which infringed on the defendants right to
remain silentan action taken by one of the advocates in the proceeding; the
trial court merely ruled.  The acts which
constituted the error in this case were solely and completely caused by the
trial judge without involvement by the States counsel.  The State never requested that the defendant
be shackled during the trial, and the record reveals that the chain was placed
on the defendant as a practice of this particular court for those who are in
jail awaiting trial, but apparently not for those able to afford bail
(everybody who is in custody has the same necessity of restraint).  Apparently, shackling is required for all in
custody with no judgment or discretion being exercised on an individual
basis.  It is the duty of the trial court
to attempt to avoid error; only the appellate courts may determine, after a
review of the entire case, if an error is of such a nature as to require
another trial.  In oral argument, States
counsel conceded there was no basis for shackling the defendant and agreed that
constitutional error occurred.  

            Generally,
the trial court commits error by ruling on issues brought before it by one of
the parties.  It is a far different
situation when the action which is a constitutional error is caused by the
judge.  If counsel seeks to continually
violate well-established constitutional provisions, the trial judge is in a
position to prevent or control it.  Who
prevents the judge from continually violating established constitutional
rights?  A basic premise of our system of
justice is that the accused should be presumed innocent until proven guilty
beyond a reasonable doubt.  It is the
function of the trial judge to institute procedures that will assure
thisinstead, here, the judge, without any cause, ordered that a chain be
placed on the defendants ankles during the jury trial.   The record indicates this is a repeated
practice in this trial court, but we are now holding that since we cannot know
for sure if the jury saw the chain or heard it rattle, the trial courts
deliberate violation of such a well-known constitutional right does not
constitute reversible error.[16]

            Additionally,
it is important that our courts operate with dignity.  The use of such devices undermines the
dignity of judicial proceedings.  Deck v. Missouri, 544 U.S. 622, 631 (2005). Even if we now believe that
consideration of the prevention of continual violation of constitutional rights
is irrelevant as to the propriety of the outcome, it is highly relevant to the the
integrity of the process leading to the conviction.  

            As one who
spent twenty-one years on the trial bench and has devoted most of his life
attempting to provide fair operation of one small part of our system of law, it
is deeply offensive to observe the sanctioning of this practice.  In essence, this case saysJudge, you may
continually violate the most basic constitutional rights of our citizens with
impunity, the very Constitution you took an oath to protect and defend, and
your case will be affirmed unless the defendant is clever enough to produce
evidence, contrary to his best interest at trial, that the jury saw or heard
the chains.   Even if the jury saw or
heard the chains and it is not reflected in the record, you are safe with the
appellate courts, regardless of the harm your continual unconstitutional
practice does to the perception of fairness and the integrity of the process in
our courts.  

            Due to their
very nature, constitutional errors require more scrutiny.  When constitutional errors occur, our inquiry
should be focused on the integrity of the process.  In other words, did the defendant receive a
fair trial.  The restraints in this case
were described as a chain connecting two iron ankle rings; our Texas Court of
Criminal Appeals has found a trial with a prisoner in irons [is] obnoxious to
the spirit of our laws and all ideas of justice.   Gray
v. State, 268 S.W. 941, 94950 (Tex. Crim. 1924) (op. on rehg).  No trial can be considered a fair trial where
a defendant, who has not been shown to be a threat, is literally tried in
chains that may have been seen or heard by the jury; an error depriving a
defendant of a fair trial cannot be considered harmless.  The error here was of constitutional magnitude;
it was knowingly committed and is an ongoing practice in this trial court;
there is no basis to reasonably conclude that beyond a reasonable doubt, the
error did not contribute to the defendants conviction or punishment.   Tex.
R. App. P. 44.2.  It should be
remanded for another trial.  

            I respectfully, but vigorously,
dissent. 

 

 

 

                                                                                    Jack
Carter

                                                                                    Justice

 

Date
Submitted:          November 2, 2011

Date
Decided:             November 3, 2011

 

Publish

 











[1]Specifically,
Bell was charged with possessing one gram or more, but less than four grams, of
a controlled substance in penalty group 2, to-wit: Ecstasy.  The controlled substance known as Ecstasy is
3-4 methylenedioxymethamphetamine.  The
State provided notice of intent to enhance Bells punishment, alleging two
prior felony convictions.  See Tex.
Health & Safety Code Ann. § 481.116 (West 2010); Tex. Penal Code Ann. § 12.41(a)(3)
(West 2011).

 





[2]The
jury found Bell guilty, found both enhancements to be true, and assessed
punishment at twenty years imprisonment. 
The trial court sentenced Bell accordingly.





[3]We
note the record contains a dismissal which states that the quantity was not a
useable quantity.  At oral argument, Bell
argued we should not consider the presence of marihuana because it was not a
useable quantity.  We disagree; the
presence of contraband is an affirmative link even if not a useable quantity.

 





[4]On
cross-examination, Sanmann testified that he had asked Bell to look for the
proof of insurance and conceded that Bell could have been following his
instructions and that the movements did not factor into his decisionmaking of
whether or not [Bell] possessed something. 
On direct examination, Sanmann testified, based on his experience as a
police officer, when someones moving around a lot in the vehicle, that
theyre hiding stuff.  

 





[5]On
cross-examination, Sanmann testified that, on one occasion, Bell said wife
and on another, Bell said girlfriend. 
The record at guilt/innocence does not clearly establish the specific
relationship of the parties.  Regardless
of whether Tanya was Bells wife or girlfriend, the jury could reasonably deduce
that Bell had a greater right of possession of the vehicle than the
driver.  We note that, during the
punishment phase, Tanya testified she had been married to Bell for four
years.  





[6]During
the guilt/innocence phase of trial, the following exchange occurred outside the
presence of the jury:

 

                [Defense Counsel]:  . . . . I understand that we took a break
because my client didnt have any leg irons on him and, currently, for the
record, he has a chain that is linked between his two ankles, if Ive described
that correctly.  We would object to that
being used as a device in front of the jury. 
I think he has the right to a presumption of innocence and this chain,
even though we will do the best to keep the jury from seeing it, if they do see
it, thats going to destroy this presumption of innocence and deny him his
right to a fair trial.

                We already have a sheriffs
deputy standing within arms reach of him, which should be sufficient amount of
security.  We have a bailiff thats been present.  I believe we have two bailiffs now and -- in
addition to -- two or three highway patrolmen right outside.  I dont think the chain is necessary.  I think its going to deprive him of a fair
trial and his rights under the United States and Texas Constitution.  So, were going to object to that.

 

                THE COURT:  Any response from the State?

 

                [The State]:  Yes, Your Honor.  I would just ask the Court to have the
bailiff provide a report as -- sitting in the various seats of the jurors
seats -- as to whether he can see the defendants seat as the -- as hes
currently configured and if he can see that the defendant is chained, making an
obvious attempt to see that.

 

                THE BAILIFF:  No, maam, you cant.  You can see the pants leg and the pants leg
covers the cuffs up, so you cannot see the chains.

 

                [Defense Counsel]:  But that presupposes hes not allowed to move
and, if he moves any, theyre going to hear a chain rattle and theyre going to
look over here and go, whos rattling a chain, whos chained up, and it can only
be my client thats chained up.  Ive
been getting up, walking around; the bailiff has; everybodys been getting up
except Ray.  They hear that chain going,
theyre going to think he must have been doing something that got him chained
up.  Theres really no need to have him
chained up, Judge.

                I dont think any of his
offenses are escapes or failure to appears. 
Im not swearing to that, but, as I remember off of his criminal
history, he doesnt have anything like that, Judge.  I dont think theres any evidence of any
intent to flee.

 

                THE COURT:  [Defense Counsel], your objection is
noted.  It will otherwise be
overruled.  The bailiffs obligation is
to the jury, not to an inmate.  There is
a person here to handle that.  Everybody who is in custody has the same
necessity of restraint.  The
difficulty is, the sheriffs office has one discreet and, therefore, we only
have the one thats been available.  We
have allowed for yall to position briefcases, and somebody went down and got
an extra one so you have two.  The State
also has one under there.  So, its the
Courts opinion that there is no impact on the presumption, and the defendant
will just be mindful about movement of his legs, and we will be sure to give
breaks for everybody to use the restroom and he can move his legs at that time.

 

(Emphasis added.) 

 





[7]We
appreciate the States professionalism and integrity in making this concession
and commend the State for clarifying the record in this regard.

 





[8]The
State represented to this Court that a more discreet restraint is normally used
than the restraint in this case. 
However, as this Court stated in Austin
v. State, No. 06-07-00161-CR, 2008 Tex. App. LEXIS 8630 (Tex.
App.Texarkana Nov. 18, 2008, no pet.) (mem. op., not designated for
publication), whether a restraint such as a leg brace was visible is not the
correct question.  While a restraint
which is not visible may result in less harm, a trial court errs if it
restrains a criminal defendant without specific reasons for the restraints in
the record.





[9]In
Deck, the United States Supreme Court
announced that a trial court errs in shackling a defendant during the
punishment phase of a trial when there is no evidence that the defendant was
violent, likely to flee, or had otherwise disrupted the trial.  Deck,
544 U.S. at 63031.  





[10]Deck concerned restraints that were only
visible.  See id. at 628.  The law, though, is well-established that any
form of restraints requires the record to reflect reasons specific to the
criminal defendant.  See Austin, 2008 Tex. App. LEXIS 8630.  This case presents an additional issue not
discussed by the United States Supreme Court in Deck.  The record contains
some evidence the restraints may have been audible.  In this case, Bells trial counsel stated the
chains would be audible.  The trial court
did not take exception to this statement and instructed the defendant to be mindful
about movement of his legs . . . .  On
appeal, Bell directs our attention to numerous references to the record where
the jury entered and exited the courtroom. 
Bell argues he was required to rise for the jury, which resulted in the rattling
of the chains.  The record does not
reflect the defendant rose and does not reflect the chains rattled, but the
record also does not reflect that the defendant did not rise and does not
reflect that the chains did not rattle. 
In Wiseman v. State, the First
District Court of Appeals considered, among other factors, the defense counsels
statement on the record that the chains were audible.  Wiseman
v. State, 223 S.W.3d 45 (Tex. App.Houston [1st Dist.] 2006, no pet.).





[11]The
State directs our attention to its notice of intent to introduce evidence of
extraneous offenses and bad acts.  We
note that, at punishment, the State introduced evidence of Bells extensive
criminal history.  Although the vast
majority of the offenses were for possession of controlled substances, the State
did introduce evidence of misdemeanor convictions for evading arrest, resisting
arrest, and terroristic threat.  At the
time Bell was ordered restrained, the record did not contain evidence of these
prior offenses, and the trial court did not reference these prior offenses when
deciding to restrain Bell.

 





[12]On
July 1, 1992, a gunman opened fire in the courtroom of the Fort Worth Court of
Appeals killing two attorneys and wounding at least two others, including a
former law clerk to this Court.  See Davis v. State, 890 S.W.2d 489, 491
n.1 (Tex. App.Eastland 1994, no pet.).





[13]The
Chapman test is codified in Texas Rule of Appellate Procedure 44.2(a), which
provides that constitutional error requires reversal of the judgment unless
the court determines beyond a reasonable doubt that the error did not
contribute to the conviction or punishment. 
Clay v. State, 240 S.W.3d 895,
904 (Tex. Crim. App. 2007) (quoting Tex.
R. App. P. 44.2(a)).





[14]The
State represented at oral argument that the briefcase used as a demonstrative
aid was not the same briefcase used to block the shackles from the jurys
view.  This representation, though, is
not part of the record.  Regardless, as
noted above, the record does not demonstrate the briefcase used as a
demonstrative aid was one of the briefcases shielding the shackles from the
jurys view.





[15]Snowden v. State, No. PD-1524-10, 2011
Tex. Crim. App. LEXIS 1321 (Tex. Crim. App. Sept. 28, 2011) (designated for
publication). 





[16]Defense
counsel objected that any movement by Bell would cause the jury to hear a chain
rattle.  The court admonished Bell to be
mindful about movement of his legs . . . .